MARTHA REVELS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. To sustain the charge of an assault with intent to murder, it is necessary to show that if the accused had killed the person assaulted, such killing would have been murder under the statute.

2. The testimony in this case held to be sufficient to sustain the verdict of guilty of an assault with intent to murder.

Writ of Error to the Circuit Court for Leon county.

The facts of the case are stated in the opinion of the court.

*E. M. Hopkins* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted, tried and convicted in the Circuit Court for Leon county of an assault with intent to murder, and the only question presented for our consideration, on the writ of error, is the sufficiency of the evidence to sustain the verdict. The testimony is sufficient, in our judgment, to sustain the verdict of the jury, and there is no valid ground for our interference. The party (Washington Preston) upon whom the assault was committed testified for the State that he was getting ready to gin and pack cotton at a certain gin house, and had been mending the gin band and his knife was open in his hand. That the accused came into the gin house, and walking towards where he was standing, asked him if he had made a certain statement in reference to her. The

statement inquired about had reference to a saying of the witness that he was going to inflict personal chastisement upon the accused. The witness replied that he had made the statement, and that if the accused did not stop her lying stories about him and his family he would beat her head off, and go to the court-house and pay for it. The accused had a knife hid under her dress or apron, but witness did not see the knife in her hand, or he would not have said anything to her. The accused then advanced on witness, cut at him and cut his finger to the bone. Witness then turned and ran to the door, the accused running after him, and as he was getting out, she cut him on the inside of the foot. The accused then went out and ran as fast as she could to a house about fifty yards away, and in a few minutes witness saw her coming towards the gin house with a gun, and when she got near the gin house she called out to witness that if he would put his head out she would shoot him, at the same time applying to him a vile epithet. Witness did not put his head out, and another party met the accused and took her back to the house. The knife which witness said the accused had hid under her dress or apron was a cane knife. It was described to the jury, the language in the bill of exceptions being: "The knife was so long (measuring length of knife on his arm just above the elbow from the fingers)." Another witness for the State, Richard Underwood, who was working at the gin house at the time, corroborated the statement of Preston, in substance, adding further that after the accused cut Preston in the foot as he ran, he went to a wood pile, got a stick and struck her twice where she was standing on the platform; and also that the accused

had no business at the gin house. The venue was shown.

This testimony, if accepted as true by the jury, is sufficient to sustain the verdict. The accused had heard of the statement made by Preston in reference to beating her, and she armed herself with a cane knife, which we must accept, in view of the statement in the bill of exceptions, as a deadly weapon, and went to the gin-house to ascertain the truth of the matter. When informed by Preston that he had made the statement, she, without any overt act on his part tending to do her any personal violence, assaulted him with the knife which she had concealed, and which the jury had the right to believe she had carried to the gin-house for the purpose of using it in an attack on him. If the accused had, under the circumstances mentioned, inflicted a wound upon Preston resulting in his death. she would have been guilty of murder. There would have been no legal justification in taking his life under the circumstances. The intent with which the assault was made can be deduced from the concealed weapon, the nature of the attack, and the object of the visit to the gin-house. There is testimony in opposition to that introduced by the State, the substance of which we have given, but we can not set aside a verdict on account of a conflict in the evidence when there is sufficient, if accepted as true by the jury, to sustain it. Saunders Walker testified for the accused that after the conversation between her and Preston, as given above, he advanced towards her, when she advanced on him and cut him with the cane knife which she had in her hand. George Vanhorn testified that he saw the accused go up stairs, but did not know what she went for, and he did not expect any difficulty. He heard a row and went up stairs and

saw Wash. leaning towards accused with knife in his hand and she cut at him with the cane knife and he ran. The accused in her statement also said that Preston started towards her with his knife in his hand and cut at her, when she cut at him. The testimony for the State was, however, that the accused cut Preston and pursued him to the door, cutting him there, before there was any indication on his part to do her any personal injury; and the conflict between the witnesses on this point was settled by the jury in favor of the witnesses for the State, and we should not disturb their verdict.

The testimony, in our judgment, is sufficient to sustain the verdict, and the judgment must therefore be affirmed.